IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Kizer Jones, | ) | Case No.: 11-02024-BGC13 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Kizer Jones, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | AP No.: 13-00015-BGC |
| | ) | |
| HSBC Mortgage Services Inc., | ) | |
| Household Finance Corporation | ) | |
| of Alabama, and Household Life | ) | |
| Insurance Company | ) | |
| | ) | |
| Defendants. | ) | |

**Memorandum Opinion on the Defendants' Motion to Dismiss
Certain Counts of the Plaintiff's Complaint**

The matter before the Court is the <u>Defendants' Motion to Dismiss Counts II, III, VI, VII and VIII and Memorandum of Law in Support Thereof</u> (Doc.#11) filed by HSBC Mortgage Services Inc., Household Finance Corporation of Alabama, and Household Life Insurance Company. A hearing was held on April 17, 2013. Appearing were the plaintiff; his attorney, Kenneth J. Lay; Alan D. Leeth, the defendants' attorney; and Ms. Mary Francis Fallaw, an attorney with the Chapter 13 Trustee's office. The matter was submitted on the pleadings, the record in this case, and the arguments and briefs of counsel. Based on the same, it appears to the Court that the motion is due to be granted. The counts unaffected by the motion will be administered in the normal course.

**I. Relevant Facts**

The plaintiff's adversary proceeding arises from a note secured by a mortgage on his home. According to his complaint, and admitted by the defendants in their answer, the mortgagee is Household Finance Corporation of Alabama ("HFCA"). HSBC Mortgage Services Inc. ("HSBC") is its servicing agent. And Household Life Insurance Company ("HLIC"), which was incorrectly designated in the complaint as "HSBC Insurance," issued a credit disability policy to the plaintiff when he executed the note and mortgage to HFCA.

In summary, the plaintiff alleges miscellaneous acts of malfeasance in connection with HFCA and HSBC's handling of his loan payments which purportedly resulted in their claiming that the note was in default, and accelerating the debt, and attempting to foreclose on his home.  With respect to HLIC, he alleges that when he became disabled and unable to work, and hence unable to make his mortgage payments, that entity failed to abide by its insurance contract and make the payments in his stead.

The complaint begins with a preamble which includes statements of jurisdictional justification; a description of the parties; and a litany of underlying facts.  It then outlays eight counts, each describing distinct causes of action.

Count I is for violation of the automatic stay by HFCA and HSBC.[1]

Count II is for violations of the Fair Debt Collection Practices Act by HFCA and HSBC.

Count III is for fraudulent misrepresentation by HFCA and HSBC.

Count IV is for breach of the mortgage contract by HFCA and HSBC.[2]

Count V is for breach of the credit disability contract by HLIC.[3]

Count VI is for intentional infliction of emotional distress  by HFCA and HSBC.

Count VII is for negligence by HFCA and HSBC.

And Count VIII is for wantonness  by HFCA and HSBC.

Each specific count is followed by a conclusory section stating the plaintiff's prayer for relief.

While not included in any of the particular "Counts" of the complaint, the plaintiff alleges in his preambulatory statement of facts that HFCA and HSBC failed or refused to comply with the Home Affordable Modification Program.  Moreover, in his prayer for relief, the plaintiff alleges, in addition, that HFCA and HSBC failed to "comply with any part of Section 2605 of Title 12 of the United States Code pursuant to Section 2605(f)

---

[1] The defendants did not ask that Count I be dismissed.

[2]  The defendants did not ask that Count IV be dismissed.

[3] While the defendants did not ask that Count V be dismissed, the Court has considered in regard to its request for punitive damages.

2

of Title 12 of the United States Code and Section 3500.21 (f) of Reg. X...." and requests damages and attorneys fees for that noncompliance. Complaint at 10, A.P. Docket No.1. [4]

The defendants seek dismissal of Counts II, III, VI, VII, and VIII of the plaintiff's complaint, as well as any causes of action based on HAMP and 12 U.S.C. § 2605, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7012(b).

## II. Conclusions of Law

### A. Fed. R. Civ. P. 12(b)(6) Dismissal Standards

The standards for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) are expounded in Speaker v. U.S. Dept. of Health and Human Services Centers for Disease Control and Prevention, 623 F.3d 1371 (11th Cir. 2010), in light of the tenants established in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009):

> In Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), the United States Supreme Court instructed that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46, 78 S.Ct. at 102. In 2007, the Supreme Court in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007), retired Conley's "no set of facts" test in favor of a new formulation of Rule 12(b)(6)'s pleading standard. Id. at 562-63, 127 S.Ct. at 1969.
>
> In Twombly, the Supreme Court distinguished "plausible" claims from allegations that were merely "conceivable," and stated that the Court "[did] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." Id. at 570, 127 S.Ct. at 1974. The Supreme Court explained that a complaint "does not need detailed factual allegations," but the allegations "must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S.Ct. at 1964-65. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. at 556, 127 S.Ct. at 1965 (quotation marks omitted).

---

[4] Section 2605 imposes certain duties on makers and tranferors of federally related mortgage loans regarding the transfer of such loans.

3

Subsequently, in Iqbal the Supreme Court clarified that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949; see also Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007)("The Court has instructed us that the rule 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.")(quoting Twombly, 550 U.S. at 556, 127 S.Ct. at 1965). Given the Twombly and Iqbal plausibility standard, we turn to whether Speaker's Amended Complaint states a claim under the Privacy Act.

...

Moreover, given the pleading standards announced in Twombly and Iqbal, Speaker must do more than recite these statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to "raise a right to relief above the speculative level." Twombly 550 U.S. at 555, 127 S.Ct. at 1965. Accordingly, to state a claim, Speaker must do more than allege that the CDC did not fulfill its record-keeping obligation. Speaker must allege the specific nature of the record-keeping obligation the CDC failed to satisfy.

...

Furthermore, Plaintiff Speaker has pleaded enough factual content to "nudge[ ] [ his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570, 127 S.Ct. at 1974. Importantly, Speaker's allegations are not barren recitals of the statutory elements, shorn of factual specificity. See id. at 555, 127 S.Ct. at 1964-65 (stating that "a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" (quotation marks and brackets omitted)).

623 F.3d at 1380; 1381; 1384.

Ordinarily, when analyzing motions to dismiss, courts may only consider the recitations contained in the complaint; documents attached to the complaint; and documents attached to the defendant's motion to dismiss if those documents are referred to in the complaint, and are central to the plaintiff's claims, and their contents are not in dispute. Financial Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). If other evidence is considered, the motion must be treated as one for summary judgment and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

## B. Numbered Counts in the Complaint

### 1. Count II - Violations of the Fair Debt Collection Practices Act

As indicated above, according to the plaintiff's complaint HFCA is his mortgagee and HSBC is the mortgagee's loan servicing agent.

Neither a mortgagee nor a mortgage loan servicing company is subject to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a, et seq. Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173, 1187 (10th Cir. 2013); Glazer v. Chase Home Finance LLC, 704 F.3d 453, 457 (6th Cir. 2013); McWeay v. Citibank, N.A., --- Fed. Appx. ----, 2013 WL 2450844, *3 (11th Cir., June 5, 2013); Hixson v. French, 517 Fed. Appx. 767, 769, 2013 WL 1731685, *2 (11th Cir., April 22, 2013); Hasbun v. Recontrust Co., 508 Fed. Appx. 941, 942, 2013 WL 531071, *1 (11th Cir., February 13, 2013); Kennedy v. United States, 478 Fed. Appx. 584, 586, 2012 WL 1758660, 1 (11th Cir., May 17, 2012); Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985); Nwoke v. Countrywide Home Loans, Inc., 251 Fed. Appx. 363, 365, 2007 WL 3037118, *1 (7th Cir., October 18, 2007); Buckentin v. SunTrust Mortg. Corp., 928 F. Supp. 2d 1273 (N.D. Ala. 2013); Patrick v. PHH Mortg. Corp., 2013 WL 1314538, *11 (N.D.W.Va., March 27, 2013); Allen v. Bank of America, N.A., 2013 WL 1164898, *7 (D. Md., March 19, 2013); Dolan v. Fairbanks Capital Corp., 2013 WL 991002, *15 (E.D.N.Y., March 13, 2013); Garrett v. BNC Mortg., Inc., 2013 WL 878749, *5 (D. Colo., March 07, 2013); McDonald v. OneWest Bank, FSB, 2013 WL 858178, *12 (W.D. Wash., March 07, 2013); Fenello v. Bank of America, N.A., 926 F. Supp. 2d 1342, 1350-1351 (N.D. Ga. 2013); Ogle v. BAC Home Loans Servicing LP, 924 F. Supp. 2d 902, 910 (S.D. Ohio 2013); Brush v. Wells Fargo Bank, N.A., 911 F. Supp. 2d 445, 477-478 (S.D. Tex. 2012); Wise v. Wells Fargo Bank, N.A., 850 F. Supp. 2d 1047, 1053 (C.D. Cal. 2012); Tedder v. Deutsche Bank Nat'l Trust Co., 863 F. Supp. 2d 1020, 1033-1034 (D. Haw. 2012); JP Morgan Chase Bank, N.A. v. Horvath, 862 F. Supp. 2d 744, 754 (S.D. Ohio 2012); Jesse v. Wells Fargo Home Mortg., 882 F. Supp. 2d 877, 879 (E.D. Va. 2012); Stroman v. Bank of America Corp., 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012); Parker v. BAC Home Loans Servicing LP, 831 F. Supp. 2d 88, 94 (D.D.C. 2011); Jenkins v. BAC Home Loan Servicing, LP, 822 F. Supp. 2d 1369, 1374 (M.D. Ga. 2011); Bentley v. Bank of America, N.A., 773 F. Supp. 2d 1367, 1371 (S.D. Fla. 2011); Janke v. Wells Fargo and Co., 805 F. Supp. 2d 1278, 1281 (M.D. Ala. 2011); Radford v. Wells Fargo Bank, 2011 WL 1833020, *15 (D. Haw., May 13, 2011); Thomas v. JP Morgan Chase & Co., 811 F. Supp. 2d 781, 801-802 (S.D.N.Y. 2011); Farkas v. Suntrust Mortg. Inc., 2010 WL 5525359, *84 (S.D. Ala., December 15, 2010); Karl v. Quality Loan Service Corp., 759 F. Supp. 2d 1240, 1248 (D. Nev. 2010); Centennial Bank v. Noah Group, LLC, 755 F. Supp. 2d 1256, 1260 (S.D. Fla. 2010); Miller v. Countrywide Home Loans, 747 F. Supp. 2d 947, 962 (S.D. Ohio 2010); Bittinger v. Wells Fargo Bank, NA, 744 F. Supp. 2d 619, 626-627 (S.D. Tex. 2010); Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835, 849 (N.D. Ohio 2010); Winstead v. EMC Mortg. Corp., 697 F. Supp. 2d 1, 3-4 (D.D.C. 2010); Nool v. HomeQ Servicing,

653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009); Diessner v. Mortgage Electronic Registration Systems, 618 F. Supp. 2d 1184, 1188 (D. Ariz. 2009); Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009); Burns v. Bank of America, 655 F. Supp. 2d 240, 254 (S.D.N.Y. 2008); Motley v. Homecomings Financial, LLC, 557 F. Supp. 2d 1005, 1009 (D. Minn. 2008); Somin v. Total Community Management Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007); McAnaney v. Astoria Financial Corp., 357 F. Supp. 2d 578, 592 (E.D.N.Y. 2005); Oldroyd v. Associates Consumer Discount Company/PA, 863 F. Supp. 237, 242 (E.D. Pa. 1994).

Consequently, Count II of the plaintiff's complaint fails, as a matter of law, to state a claim against either HFCA or HSBC upon which relief can be granted and is due to be dismissed.

As to HLIC, the plaintiff did not call HFCA or HSBC by name in Count II of his complaint. Instead he used the nondescript term "Defendants." It must be assumed that he did not mean to lump HLIC, which was not named in that count as well, into the mix because the complaint, either in Count II or elsewhere, contains no allegations which suggest that HLIC ever did anything in an attempt to collect a debt of any sort from him.

Consequently, Count II of the plaintiff's complaint also fails to state a claim against HLIC upon which relief can be granted and is due to be dismissed.

### 2. Count III - Fraudulent Misrepresentation

The plaintiff alleges in Count III of his complaint that in the mortgage document the "Defendants" represented that they would apply the payments made by him first to mortgage insurance premiums due; second to any taxes, special assessments, and hazard insurance premiums as required; third to interest; and fourth to late charges. The plaintiff claims that instead of applying his payments in that manner, the "Defendants" used those payments to pay legal fees, costs, and other "corporate advance account liabilities." Complaint at 6, A.P. Docket No. 1. He claims that those representations, which he says are written terms of the mortgage instrument, were intentionally false, and were intended to induce him to "continue to make regular monthly mortgage payments." Id.

Since payments to the mortgagee were not to begin until after execution of the mortgage, the representations contained in that document regarding how those payments would be applied necessarily constituted promises regarding future performance. A plaintiff, in order to state a cause of action based on a promise to do or abstain from doing something in the future, must allege that the defendant made the promise with the intent to deceive the plaintiff and, that at the time he made the false promise, the defendant intended not to honor it. Ex parte Moulton, 116 So.3d 1119, 1144 (Ala. 2013). Hence, "[w]here the alleged fraud is 'predicated upon a promise, it is essential that the [pleader allege that the] promisor intended not to perform at the time

6

of making the promise.' " Bethel v. Thorn, 757 So.2d 1154, 1158 (Ala. 1999)(quoting Robinson v. Allstate Ins. Co., 399 So.2d 288, 290 (Ala. 1981)(parenthetical added).

The plaintiff did not allege in his Count III that when it executed the mortgage in October 2007, HFCA harbored the intent not to apply his future payments in the manner specified in that document. "In alleging fraud..., a party must state with particularity the circumstances constituting fraud ...." Fed. R. Civ. P. 9(b).

For this reason, Count III cannot survive a 12(b)(6) motion.

Moreover, the sole "fact" relied upon for the "intent" element of his fraud cause of action is the plaintiff's generalized allegation, "that instead of applying his regular monthly mortgage payments in the manner described above, Defendants paid legal fees, costs, and other corporate advance account liabilities prior to insurance, taxes, interest and principal." Complaint at 6, A.P. Docket No. 1. A cause of action for promissory fraud, however, cannot, as a matter of law, be based on nonperformance alone. " '[F]ailure to perform alone is not sufficient evidence to show a present intent not to perform. If it were, then every breach of contract would be "tantamount to fraud." ' " Heisz v. Galt Industries, Inc., 93 So.3d 918, 925-926 (Ala. 2012)(quoting Gadsden Paper & Supply Co. v. Washburn, 554 So.2d 983, 987 (Ala. 1989)(citing and quoting Purcell Co. v. Spriggs Enters., Inc., 431 So.2d 515, 519 (Ala.1983)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, a complaint that alleges facts, "that are 'merely consistent with' a defendant's liability," or which support no "more than a sheer possibility that a defendant has acted unlawfully," falls short of the plausibility standard. Id. (quoting Twombly, 550 U.S. at 570).

Therefore, absent facts in addition to nonperformance, the plaintiff's Count III only hints of the "mere possibility of misconduct," i.e., that HFCA intended to deceive him, while at the same time it does not allege sufficient "factual content [from which this Court can] draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (parenthetical added). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679 (quoting Twombly, 550 U.S. at 556).

For this reason also, Count III fails to state a claim upon which relief can be granted and must, for that reason, be dismissed.

Furthermore, the plaintiff failed in Count III to describe with particularity, or even in a general manner, how many payments were purportedly misapplied, when those payments were misapplied, or how they were applied. Does he contend that HFCA

7

and/or HSBC misapplied all of the payments that he has made from the outset? Or does he contend that they misapplied all of the payments that he made after he first defaulted on the loan? The plaintiff cannot, as he has done, merely state his conclusion that HFCA and/or HSBC misapplied his payments without providing any factual detail at all to support that conclusion. That, it seems, is the very situation that Twombly and its progeny intend to prevent.

Finally, the plaintiff's allegation that it was the "Defendants" intent, by making the allegedly false representations in the mortgage instrument in the form of terms relating to the application of his mortgage payments, to "to induce [him] to ... continue to make regular monthly mortgage payments," is inconsistent with a theory that HFCA did not intend to abide by those terms when it agreed to them. Complaint at 6, A.P. Docket No. 1 (parenthetical added). Implicit in that allegation is that HFCA formulated its alleged intent to defraud the plaintiff, by applying his payments in a manner inconsistent with those terms, sometime after the mortgage was executed, and after he had already made any number of mortgage payments, which had been, ostensibly, properly applied, for the purpose of inducing him to continue making payments as he had in the past. Indeed, to "continue" denotes future performance following past performance of the same type. The common meaning of the word "continue" is "to do something without stopping; to keep doing something in the same way as before; to stay in a job or position; to keep happening or existing; to remain active or in existence without changing or stopping." Merriam-Webster, n.d. Web. 27 Sept. 2013. <http://www.merriam-webster.com/dictionary/continue>. If the plaintiff's unpleaded contention is, in fact, that HFCA did not intend to honor the payment application terms from the beginning of the mortgage, he would have alleged that he was misled by its false promise to do so into executing the mortgage to begin with. Instead, his express allegation that HFCA intended only to fraudulently induce him, at some undisclosed point in time following his execution of the mortgage, into continuing his mortgage payments, precludes the conclusion that he intended in Count III to state a cause of action for promissory fraud, which requires a defendant to have harbored the intention to not perform a promise at the time he made that promise.

Consequently, for the above reasons, Count III of the plaintiff's complaint also fails to state a claim upon which relief can be granted and is due to be dismissed.

### 3. Count VI - Intentional Infliction of Emotional Distress

Count VI of the plaintiff's complaint, entitled "Intentional Infliction of Emotional Distress," reads:

> 55. The Defendants, by engaging in an effort to collect fees from the Plaintiff which have not been earned or are not allowed by statute is a course of behavior that which is likely to result in severe emotional distress.

8

> 56. The Defendants intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion, and financial security of the Plaintiff, by continually attempting to foreclose on the property when it neither had proper standing to enforce said note nor properly applied payments such that the default on the Plaintiff's account was inaccurate.
>
> 57. The Defendants intentionally and/or negligently caused harm to the Plaintiff's emotional well being by engaging in this highly offensive conduct thereby invading and intruding upon Plaintiff's privacy and compromising the Plaintiff's financial position.
>
> 58. The Defendants' grossly careless conduct unlawfully invaded plaintiff's personal privacy and proximately caused the Plaintiff to suffer actual damages. The Defendants' conduct was intentional, reckless and willful, and the Plaintiff is entitled to recover exemplary damages in an amount to be set by the trier of fact. The Plaintiff also seeks damages for the mental and emotional anguish distress that has been caused by continually having to defend herself in foreclosure proceedings that should not have continued or been permitted to be commenced.

Complaint at 8, A.P. Docket No. 1.

Under Alabama law, the intentional infliction of emotional distress is also known as the tort of outrage. Ex parte Bole, 103 So.3d 40, 52 (Ala. 2012). It has been adopted in Alabama in the form proposed by the Restatement (Second) of Torts § 46 (1948) which reads:

> [O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. Comment, Restatement[ (Second) of Torts § 46], at 78 [ (1948) ]. By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. Comment (d), Restatement, supra at 72.

Id. at 52 (quoting American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980)).

It has been recognized only in very limited circumstances. The following explains:

9

Case 13-00015-BGC    Doc 18    Filed 09/30/13    Entered 09/30/13 13:01:54    Desc Main
Document    Page 9 of 14

> The tort of outrage is an extremely limited cause of action. It is so limited that this Court has recognized it in regard to only three kinds of conduct: (1) wrongful conduct in the family-burial context, Whitt v. Hulsey, 519 So.2d 901 (Ala. 1987); (2) barbaric methods employed to coerce an insurance settlement, National Sec. Fire & Cas. Co. v. Bowen, 447 So.2d 133 (Ala. 1983); and (3) egregious sexual harassment, Busby v. Truswal Sys. Corp., 551 So.2d 322 (Ala. 1989). See also Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law, § 23.0 (2d ed.1996). In order to recover, a plaintiff must demonstrate that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." Green Tree Acceptance, Inc. v. Standridge, 565 So.2d 38, 44 (Ala. 1990)(citing American Road Service Co. v. Inmon, 394 So.2d 361 (Ala. 1980)).

Id. (quoting Potts v. Hayes, 771 So.2d 462, 465 (Ala. 2000)).

The above does not limit the tort of outrage to those three circumstances. This recent description explains:

> Recently, this Court affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction. See O'Rear v. B.H., 69 So.3d 106 (Ala. 2011). It is clear, however, that the tort of outrage is viable only when the conduct is " 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.' " Horne v. TGM Assocs., L.P., 56 So.3d 615, 631 (Ala. 2010)(quoting Inmon, 394 So.2d at 365).

Id. at 53 (quoting Little v. Robinson, 72 So.3d 1168, 1172–73 (Ala. 2011).

The only "facts" alleged by the plaintiff in support of Count VI of his complaint, which appear in paragraph 56 of the same, are that the "Defendant" "continually attempt[ed] to foreclose on the property when it neither had proper standing to enforce said note nor properly applied payments such that the default on the Plaintiff's account was inaccurate." Complaint at 8, A.P. Docket No. 1 (parenthetical added). In other words, improper application of the plaintiff's payments threw the loan into an artificial default, thus rendering the HFCA's efforts to foreclose the loan unauthorized as well.

Its safe for this Court to say that this alleged conduct pales in comparison to the conduct which the Alabama courts have recognized as sufficiently egregious to merit liability for the tort of outrage, and falls well short of being "so outrageous in character

and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Compare Horne v. TGM Assocs., L.P., 56 So.3d 615 (Ala. 2010); Little v. Robinson, 72 So.3d 1168 (Ala. 2011); Wal-Mart Stores, Inc. v. Smitherman, 872 So.2d 833 (Ala. 2003); Evans v. Waddell, 689 So.2d 23 (Ala. 1997); McDuff v. Turner, 679 So.2d 1071 (Ala. Civ. App. 1996); Carter v. Innisfree Hotel, Inc., 661 So.2d 1174 (Ala. 1995); Jackson v. Alabama Power Co., 630 So.2d 439 (Ala. 1993); Love v. Townsend Ford, Inc., 623 So.2d 1153 (Ala. 1993); K.S. v. Carr, 618 So.2d 707 (Ala. 1993); Bloodsworth v. Morgan, 593 So.2d 55 (Ala. 1991); Anderton v. Gentry, 577 So.2d 1261 (Ala. 1991); Perkins v. Dean, 570 So.2d 1217 (Ala. 1990); Harris v. McDavid, 553 So.2d 567 (Ala. 1989); Logan v. Sears, Roebuck & Co., 466 So.2d 121 (Ala. 1985); Empiregas, Inc., of Gadsden v. Geary, 431 So.2d 1258 (Ala. 1983); McCall ex rel. McCall v. Household Finance Corp., 2013 WL 765590, *5 (Ala. Civ. App., March 1, 2013); Thomas v. Williams, 21 So.3d 1234 (Ala. Civ. App. 2008); Hurst v. Cook, 981 So.2d 1143 (Ala. Civ. App. 2007); Key v. Compass Bank, Inc., 826 So.2d 159 (Ala. Civ. App. 2001); Sanders v. Shoe Show, Inc., 778 So.2d 820 (Ala. Civ. App. 2000); DeLeon v. Kmart Corp., 735 So.2d 1214 (Ala. Civ. App. 1998).

Consequently, Count VI of the plaintiff's complaint also fails to state a claim upon which relief can be granted and is due to be dismissed.

### 4. Count VII & VII - Negligence and Wantonness

Count VII of the plaintiff's complaint, entitled "Negligence," reads:

> 60. Defendants negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed Plaintiff , negligently defaulted the Defendant, negligently attempted to conducted a foreclosure sale on the property, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the adverse reporting from their credit information.

Complaint, at 8, A.P. Docket No. 1.

Count VIII of the plaintiff's complaint reads:

> 64. Defendants acted with reckless indifference to the consequences, and consciously and intentionally wrongfully serviced the loan made the basis of this suit, attempted to collect sums not owed by

11

> Plaintiff, improperly defaulted the loan, attempted to conduct a foreclosure sale on the property, failed to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; failed to properly train their employees on the thorough investigation of disputed accounts; failed to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiff's loan account and failing to remove the adverse reporting from Plaintiff's credit once he disputed the same.

Complaint at 9, A.P. Docket No. 1.

Both paragraphs lack any factual statements to support them. They consist almost entirely of "legal conclusion[s] couched as factual allegation[s]." Ashcroft, 556 U.S. at 678 (parentheticals added). "[They] tender[]" "naked assertion[s]" devoid of "further factual enhancement." Id. (parentheticals added). Therefore, under Twombly and its progeny, they fail to state claims upon which relief can be granted and cannot withstand the defendants' motion to dismiss.

Consequently, Counts VII and VIII of the plaintiff's complaint also fail to state claims upon which relief can be granted and are due to be dismissed.

### C. "Unnumbered Counts" in the Complaint

#### 1. The HAMP "Count" Claim

In paragraphs 13 and 15 of the preambulatory section of his complaint entitled "Facts," the plaintiff made the following allegation:

> Subsequently, the Plaintiff attempted several times to have his loan modified through the federal HAMP program. Despite meeting the guidelines for a modification and sending the required information and documentation, the Defendants failed and refused to modify his loan.
>
> ...
>
> The Plaintiff also attempted to avoid foreclosure by applying for a loan modification through the loss mitigation program provided by the federal HAMP program. Even though Defendants allegedly turned down the Plaintiff's request for a HAMP modification, they never sent him a proper notification of the denial as required by federal law.

Complaint at 3, A.P. Docket No. 1.

To the extent those statements constitute an effort by the plaintiff to state a cause of action under the Home Affordable Modification Program created by the United States Department of the Treasury pursuant to the Emergency Economic Stabilization Act of 2008, 2 U.S.C. §§ 5201–5261, they are unsuccessful.  In Miller v. Chase Home Finance, LLC, 677 F.3d 1113, 1116 (11th Cir. 2012), the Eleventh Circuit Court of Appeals held that a borrower has no private cause of action under HAMP against a lender that refuses to modify a loan.

Consequently, the plaintiff's HAMP claim, if any, also fails to state a claim upon which relief can be granted and is due to be dismissed.

### 2. The Real Estate Settlement Procedures Act "Count"

In his prayer for relief, the plaintiff made the following request:

> E. That this Court order the Defendants to pay to the Plaintiff his attorney's fees and costs and additional actual damages a sum to be determined by the Court for each failure to comply with any part of Section 2605 of Title 12 of the United States Code pursuant to Section 2605(f) of Title 12 of the United States Code and Section 3500.21 (f) of Reg. X ....

Complaint at 10, A.P. Docket No. 1.

That paragraph is also devoid of any factual statements to support it.  It does not name what sections of 12 U.S.C. § 2650 were purportedly violated, which defendants purportedly violated those undisclosed provisions, and what actions by said unnamed perpetrator constituted violations of those provisions.  It consists entirely of "legal conclusion[s] couched as factual allegation[s]."  Ashcroft, 556 U.S. at 678 (parentheticals added).  "[I]t tenders "naked assertions" devoid of "further factual enhancement."  Id.  Consequently, under Twombly and its progeny, it fail to state a claim upon which relief can be granted.

Consequently, the plaintiff's Real Estate Settlement Procedures Act claim, if any, also fails to state a claim upon which relief can be granted and is due to be dismissed.

### D.  Count V's Punitive Damages for Breach of Contract Claim

In Count V of his complaint, the plaintiff states a cause of action against HLIC for breach of the credit disability contract.  It alleges:

> 51. HSBC Insurance breached the contract wherein it agreed to provide mortgage disability insurance and make the mortgage payments on behalf of the Plaintiff in the event of the Plaintiff's disability. Plaintiff filed a disability claim and HSBC Insurance failed or refused to follow the contract by failing or refusing to make the Plaintiff's monthly mortgage payment.

13

> 52. As a result of the above violation, the Defendant is liable to the Plaintiffs for actual damages, <u>punitive damages</u> and legal fees.

<u>Complaint</u> at 7, A.P. Docket No. 1.

That count must be dismissed to the extent the plaintiff seeks punitive damages for HLIC's alleged breach of its contract. Under Alabama law, punitive damages cannot be awarded for breach of contract. <u>Exxon Mobil Corp. v. Alabama Dept. of Conservation and Natural Resources</u>, 986 So.2d 1093, 1118 (Ala. 2007).

Consequently, the plaintiff's claim for punitive damages in Count V cannot, as a matter of law, be granted and is due to be dismissed.

### III. Conclusion

Based on the above, this Court concludes that:

1. The <u>Defendants' Motion to Dismiss Counts II, III, VI, VII AND VIII and Memorandum of Law in Support Thereof</u> (Doc.#11) filed by HSBC Mortgage Services Inc., Household Finance Corporation of Alabama and Household Life Insurance Company is **GRANTED** with respect to Counts II, III, VI, VII, and VIII of the plaintiff's complaint;

2. Counts II, III, VI, VII, and VIII of the plaintiff's complaint are therefore **DISMISSED**;

3. Count V of the plaintiff's complaint is also **DISMISSED** to the extent, and only to the extent, that it requests punitive damages; and

4. The remaining counts will be scheduled for status by a separate document.

Dated: September 30, 2013      /s/Benjamin Cohen
                               BENJAMIN COHEN
                               United States Bankruptcy Judge

BC:sm